## BYERS ET AL. VS. ENGLES.

A deed for the conveyance of real estate, duly executed, &c., is good and valid against a creditor of the person executing such deed, obtaining a judgment, which, by law, is a lien on real estate; and, also, against a purchaser of such real estate at a judicial sale under the judgment, if actual notice of the deed be given to the purchaser and to the creditor, or his attorney of record, or if such deed be filed for record, at any time before the sale, though not until after the judgment is rendered and execution levied upon the land.

Such notice may be given at any time before, or at the time of the sale under execution; and will be sufficient, though the deed be not produced.

Continuous possession by the grantee, from the date of the judgment to the day of the sheriff's sale, would also be sufficient notice to put both the judgment creditor and the purchaser upon enquiry. (*Hamilton vs. Fowlkes et al. ante.*)

*Appeal from the Circuit Court of Independence County.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

WILLIAM BYERS, for the appellants. This case must be determined by the construction of the *31st section*, *chap. 37, Digest.*

The debt for which the judgment was rendered, was contracted when Harvey Engles was the owner of the land, and notwithstanding the deed was made to John Engles before the judgment, it was not filed for record until after the levy was made; and there is no pretence of notice, to either the judgment creditor or the purchaser, of the deed until after the levy.

The whole policy of our Legislation and laws is that the title or claim of a party to real estate must be matter of record. *Trapnall vs. Richardson et al.* 10 *Ark.* 555.

It would be against the spirit and policy of our laws, to say that notice of an unregistered deed, after judgment, would cut off the lien of a judgment creditor. Such a construction would cut off

from the creditor that which the act intended to secure 'him. The debtor's title being perfect, as far as the record shows, he obtains credit, and the creditor obtains judgment, but before he can have the land sold under execution, the man who holds the secret deed notifies him of it, and he thereby loses his debt.    Notice cannot affect the judgment lien.    Suppose the purchaser has notice, and the judgment creditor has not, can it affect the lien of the judgment creditor ?    Or suppose the creditor has notice, and the purchaser has not, can it affect the purchaser ?    Notice cannot affect this case, if the appellee's deed was not recorded before the rendition of the judgment.    *Simple vs. Burd*, 7 *Serg. & Rawle* 286 ; *Jaques vs. Weeks*, 7 *Watts Rep.* 261 ; *Cleveland Bank vs. Sterges et al.*, 2 *McLean's Rep.* 341 ; *Coffin vs. Ray*, 1 *Metcf.* 212 ; *Sigourney vs. Larned*, 10 *Pick.* 72 ; *Cushing vs. Hurd*, 4 *ib.* 253 ; *Warden vs. Adams*, 15 *Mass.* 233 ; *Batt. & Dar. Eq.* cases 470 ; 3 *Penn. Rep.* 240 ; 1 *ib.* 447 ; 4 *Rawle* 255 ; 14 *Serg. & R.* 236 ; 19 *ib.* 70.

A deed not recorded is void, as to creditors, without notice of the conveyance at the time their debts were contracted.    1 *Dana* 166.    A purchaser under execution is not affected by a notice of a mortgage, which was not recorded ; and, therefore, void as to creditors.    *Helm vs. Logan's heirs*, 4 *Bibb* 78.    The position we insist upon is fully sustained in *Benjamin vs. Hyatt et al.*, 1 *Smedes & Marsh. Ch. Rep.* 437.

FOWLER, for the appellee.    Harvey Engles having conveyed away the land in controversy, before the judgment, his deed divested him of all title, and vested it in the defendant.    *Robinson vs. Rowan*, 2 *Scam. Rep.* 501 ; *Shields vs. Mitchell*, 10 *Yerg. Rep.* 8 ; *Jackson vs. Town*, 4 *Cowan* 605 ; 7 *Smedes & Mar.* 22 ; *Orth vs. Jennings*, 8 *Black.* 425.

A judgment is not a lien on lands previously conveyed away by an unrecorded deed.    *Orth vs. Jennings*, 8 *Blackf. Rep.* 425 ; *Jackson vs. Du Bois*, 4 *John. Rep.* 221 ; *Money vs. Dorsey*, 7 *Smedes & Marsh.* 22,

Where the judgment debtor, before the rendition of the judgment, conveyed away his land, *bona fide*, no interest remained to him which could be sold under execution, and a purchaser at such sale could acquire no title, although the deed was not registered. *Briggs vs. French*, 2 *Sumn. C. C. Rep.* 253 ; *Webster vs. Maddox*, 6 *Greenl. Rep.* 258 ; *McSouth vs. Rathbone*, 19 *Ohio Rep.* 25 ; *Money vs. Dorsey*, 7 *Sm. & Mar.* 22 ; *Taylor vs. Eckford*, 11 *ib.* 33 ; 8 *Blackf. Rep.* 321 ; 1 *Paige* 284.

There is no period fixed under the statute, (*Ark. Dig.*, *p.* 262, *sections* 30, 31,) within which a deed must be filed for record. And if filed before the purchase under judicial sale is made, it protects the grantee, because the purchase afterwards cannot be *bona fide*. And whenever it is filed, as to the creditor, it relates back to its execution, and takes precedence over an intermediate judgment. The filing for registry places it upon an equality with the judgment, and that which is prior in time, as to its execution, becomes prior in right.

The primary object of registration being to give notice to subsequent purchasers, it is now settled law, under the registry acts, that actual notice is equivalent to registration. *Webster vs. Maddox*, 6 *Greenl. Rep.* 258 ; *Van Renssalaer vs. Clark*, 17 *Wend.* 30 ; 2 *Scam.* 501 ; 4 *Mass.* 639; 11 *S. & M.* 33.

Even the actual possession of the land by the defendant for so many years, from the commencement of the suit to the day of the sheriff's sale, was sufficient evidence of a title in [fee, and notice to all persons. 2 *Saund. Pl. & Ev.* 729 ; *Willard vs. Warren*, 17 *Wend* 261 ; *Smith vs. Tucker*, 9 *Ala.* (*N. S.*) 210 ; *Troup vs. Hurlbut*, 10 *Barb. S. C. Rep.* 358 ; 4 *B. Mon.* 466 ; *Adams on Ejectment* 54 ; 4 *Cowen* 602 ; 3 *A. K. Marsh.* 623 ; 6 *Greenl.* 258 ; 3 *Paige* 437 ; 10 *How. U. S. Rep.* 375.

Mr. Justice WALKER delivered the opinion of the Court.

Byers and Patterson brought an action of ejectment against John Engles for a tract of land. The judgment in the Circuit Court was for the defendant, from which the plaintiffs appealed.

The plaintiffs claim title to the land, as purchasers at a judicial sale. The proceedings, under which the sale was made, were regular, and a valid deed made by the sheriff to the plaintiffs, who purchased the land. No objection is taken by defendant to the regularity of the proceedings or the deed; but, in defence, he sets up a title, by deed, from Harvey Engles, the defendant in execution, to himself, duly executed and delivered before the commencement of the suit, and the rendition of the judgment under which the land was sold to the plaintiffs; which was, however, not filed for record until after the judgment had been rendered, and execution thereon issued, and levied upon the land.

Waiving all consideration of the legal sufficiency of the respective titles, in other respects, the contest for title is between the prior unregistered deed, and the judgment lien creditor, or rather the plaintiff under him. It is contended on their part, that by force of the statute the judgment, under which they bought, was a lien upon the land from its date, and although the deed from Harvey Engles to John Engles was prior in date to the judgment, yet as it was not filed for record until after the rendition of the judgment, and the levy upon the land, the title of John Engles was void, as against the judgment lien creditor, or one purchasing under the judgment lien; and this, though they had actual notice of the deed before the sale of the property, or that if such notice could affect their title, it must be given before the the judgment is rendered, and the lien has attached.

On the part of the defendant it is contended, that the judgment lien only attached to the lands of the debtor at the time the judgment was rendered, subject to all then existing equities and incumbrances. That although recording or filing the deed for record, would, under the statute, be good constructive notice, actual notice is equivalent to constructive notice, and is sufficient to protect the rights of the defendant under the deed, if given at any time before or at the sale of the property, and that such notice was, in fact, given before, and at the time of the sale. And that in addition to this, defendant had in fact entered upon

the lands so conveyed, and was in actual possession of the same before the judgment was obtained, and so continued up to, and at the day of sale, and that this was sufficient to affect the plaintiffs with notice.

The question thus presented, is one of much importance, and has been fairly presented, and ably argued by counsel on both sides. Our statute (*Dig., p.* 269, *sec.* 30,) provides, "that all instruments affecting the title to real or personal property, whether in law or equity, which are required by law to be recorded, shall, from the time the same are filed for record, be constructive notice to all persons."

And the 31*st section* provides: "That no deed, bond or instrument of writing, for the conveyance of any real estate, or by which the title thereof may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; or against any creditor of any person executing such deed, bond, or instrument, obtaining a judgment or decree, (which by law may be a lien upon such real estate,) unless such deed, bond, or instrument, duly executed and acknowledged, or proven as is, or may be required by law, shall be filed for record in the office of the clerk, and ex-officio recorder of the county, where such real estate may be situated."

It will be seen that the 30*th section* makes deeds, &c., filed for record, constructive notice from the time they are filed. And the 31*st section* makes actual notice equivalent to registry notice as against purchasers; but does not, in express terms, extend to judgment lien creditors.

Thus leaving the latter clause of the section, which relates to judgment lien creditors, to be construed in view of the whole statute, and its obvious intent according to precedent and authority, considering the statute as, in terms, declaring all unregistered deeds, &c., void as against subsequent judgment liens.

The question is, shall we give this statute a literal construction, by which judgment lien creditors will override all incumbrances,

or conveyances not of record at the time judgment is obtained, wholly irrespective of any actual notice which the judgment creditor may have; or shall we place this class of creditors upon the same general footing of creditors, who contract for liens, and hold actual notice equivalent to registry notice in all cases?

If the distinction is taken in favor of judgment liens, we are at a loss to conceive any sufficient reason for doing so. It cannot be doubted but that all creditors, who have claims of equal merit, (that is, upon fair consideration) have a corresponding right, in the first instance, to satisfaction out of the debtor's property; but, in the meantime, any fair and honest disposition of the property should be respected. If one creditor contracts for a specific lien upon part of the debtor's property, and another creditor, instead of contracting for a like lien, sues the debtor and obtains judgment, at this point the law confers a lien upon the judgment creditor. If the judgment creditor had, instead of suing, obtained his lien by contract, with a knowledge of the prior mortgage of the first creditor, whether the notice was constructive registry notice, or actual notice, by the uniform and well established rules of construction given to the registry acts of England, and of America, such actual notice would have been held equal to registry notice, and the subsequently acquired lien would have been held subject to the prior liens; because, as the object of the statute was to prevent fraud by means of secret conveyances, when the conveyance is open and the creditor has notice, the means by which it is communicated is comparatively unimportant. With notice, no fraud can be practised upon him. And shall we say that this is less true with regard to judgment creditors? Why should their lien override prior liens, of which they had notice, simply because the one is of record, the other not?

In the absence of some more potent reason than has been urged, or suggests itself, we can scarcely believe that the Legislature intended to make such distinction in favor of judgment creditors. It has been held upon high authority, that the judgment lien is inferior to that created by contract; because it is a mere gra-

tuity, conferred by law upon the creditor, for which he pays nothing, and is intended as a security against subseqent incumbrances. Thus, in *Kersland vs. Avery*, 4 *Paige* 14, it was held: "That the lien of the judgment is subject to every equity that existed against the land, in the hands of the debtor, at the time of docketing the judgment.

"The lien of the judgment can only operate on the interest which the debtor had at the time of its rendition." *Mooney vs. Dorsey*, 7 *Sm. & Mar.* 22.

"The judgment creditor is entitled to the debtor's real interest alone, subject to his equities as they existed at the date of the judgment." *Adams Eq.* 311.

Judge KENT says: "A lien amounts to but a security against subsequent purchasers and incumbrancers." 4 *Kent* 437.

And so this court, in *Watkins & Trapnall vs. Wassell*, said: "The office of a lien is not to create an estate, nor in the slightest degree to affect, or interfere with prior incumbrances, but to prevent subseqent alienations and incumbrances." Taking this view of the judgment lien, and of the general rights of creditors, there would seem to be no sufficient reason for the distinction attempted to be set up in favor of judgment creditors. Our statute is not stronger in terms than the English, and most of the American statutes upon the same subject; and with regard to these it may suffice to rely upon the research of Judge KENT, who says: (*Kent's Com.*, vol. 4, 159,) "It is a settled rule in the English and American law, that if a subsequent purchaser has notice, at the time of his purchase, of the prior unregistered deed, he shall not avail himself of the priority of his registry to defeat it. That if in fact, the second purchaser has notice, the intent of the registry act is answered. And to permit him to hold against the first purchaser, would be to convert the statute into an engine of fraud."

Upon general principles, therefore, the construction of the registry acts may be said to be well and firmly established, and it is but fair to suppose that the language of our statute, being like

that of the English, and most of the American States, was adopted with reference also to the uniform construction which these statutes had received. And so permanently has this construction been settled, as well as a like liberal construction of the statute of frauds, and some others, that to change the construction given by the courts would, in effect, be changing the law itself.

So far as regards purchasers there can be no controversy, and although a distinction was, at one time, attempted to be set up between purchasers and creditors, denying a like liberal construction to the latter, which seems yet to prevail in Pennsylvania, and in some of the other States not to be very clearly settled, the weight of authority would seem to place creditors and purchasers upon the same general footing with regard to notice and the effect of it upon junior creditors and purchasers.

The *Act of Parliament*, 7 *Anne Ch*. 20, in unqualified terms, declared unregistered conveyances void as to subsequent purchaors and mortgagees; yet Lord HARDWICKE, in *Leneve vs. Leneve*, 3 *Atkins* 646, when considering this and the act of 27, *Hen*. 8, *ch*. 16, held that these acts were intended to screen innocent persons against prior secret conveyances, and fraudulent incumbrances; and if a subsequent purchaser has notice of the existence of the prior conveyance, then it is not secret or fraudulent.

The registry act of South Carolina is stronger than the English statutes, because the act not only declares deeds, conveyances, &c., not recorded within the time prescribed, void, except only as between the parties, but in express terms so declares that such instrument, unless so recorded, "shall be void and incapable of barring the right of persons claiming as creditors, or under subsequent purchases, recorded in the manner described."

In construing this statute, the Supreme Court of that State, in *McFall vs. Serrott*, 1 *Const. Rep*. 296, said: "It is obvious that the mischief, intended to be remedied by this act, was the facility with which frauds might be practised by double conveyances, and the remedy provided is recording the deed in the Clerk's Office. Thus, constituting a common place of deposit for all of

the land titles in the district, to which all may resort for information, and thus protect themselves from such practices. But if this information is attained by other means, the object of the act is accomplished, and on the principle that when the reason ceases, the law also ceases, the law becomes inoperative, and its sanctions do not attach."

This was a case of purchase under execution; the purchaser at the time having notice of the unrecorded deed, and such notice was held to be sufficient.

The registry act of Alabama declares all deeds, &c., void, against *bona fide* purchasers, and mortgagees for a valuable consideration, unless acknowledged and recorded. In the case of *Ohio Life Insurance Company vs. Ledyard*, 8 *Ala. Rep.* 866, the Supreme Court of Alabama held, that the design of the statute requiring registration, was to give notice that creditors and purchasers might not be deluded and defrauded, and as to all such who have not notice in fact, the unregistered deed is void. That actual notice of the existence of the deed is equivalent to constructive notice, afforded by registration.

In *Daniel vs. Sorrells*, 9 *Ala.* 436, it was held that the creditors, referred to in the statute, were not creditors at large, but such as have obtained a lien by the recovery of a judgment, &c. The court waives the consideration of the effect of notice before judgment, but holds that notice, after judgment, to the judgment creditor, will not avail: even though notice may have been given to the purchaser before his purchase, if the plaintiff in execution had no notice until after judgment.

The registry act of Massachusetts provides, that no conveyance, &c., shall be valid and effectual against a person, other than the grantor, his heirs, &c., and persons having actual notice thereof, unless it is made by a deed, recorded, &c. The Supreme Court of Massachusettt in *Priest vs. Rice*, 1 *Pick.* 164, held that a creditor, knowing of a conveyance of land, made by his debtor for a valuable consideration, which is not registered, cannot, by attachment and levy upon the land, obtain a title against the

grantee. In that case it was admitted in argument, that if the claim was under a deed, instead of a levy, he could not hold against the demandant, although the deed to him may have been executed, delivered and registered before the deed to the demandant was registered: and put his case expressly upon the issue, as to whether a creditor, knowing of a conveyance made by his debtor for a valuable consideration, which is not registered, may not, nevertheless, attach the same land and obtain title against the grantee by a levy of the execution. PARKER, Chief Justice, who delivered the opinion of the court, distinguished between purchaser and creditor. He said: "There is undoubtedly a difference between the two cases, for in case of a second purchaser having knowledge of the former conveyance, there is fraud between the grantor and grantee; whereas land, which has been conveyed by deed, not registered, may be attached without the privity, and so without any fraud of the grantor. Still, we think the effect of a conveyance, actually made and delivered, and known to be so by a creditor, is the same, under the construction which has been given to the statute in relation to such creditor, as it would be in relation to a second purchaser under like circumstances; and it has so been considered by the court in the several cases, which have presented the subject to them. * * * If he sees no occasion to attach, until after a *bona fide* conveyance is made, with valuable consideration, and this is made known to him, justice does not require that he should have a right to intercept a title, for want of that ceremony, which is to bind every one, he having full knowledge of the fact, which would be made public by it."

The first section of the registry act of Mississippi, provides, that no estate of inheritance, or freehold, &c., shall be conveyed, unless in writing; nor good against a purchaser, for a valuable consideration, not having notice thereof, unless filed for record, &c. The third section declares all such conveyances void, as to creditors and subsequent purchasers without notice, unless filed for record, &c.

In *Dixon & Starkey vs. Doe ex. dem. Lacoste*, Judge SHARKEY made a lengthy opinion in regard to the construction of this statute. The contest for title being between a judgment lien creditor, and one holding title by a prior unrecorded deed; the claimant under the deed having been in actual possession of the land, at the time the judgment was rendered, under which the purchaser, at sheriffs sale, claimed title—Judge SHARKEY remarked, that taking the two sections together, both creditors and purchasers were, clearly, and beyond dispute, placed upon the same grounds. But the judge goes further, and holds the first section, of itself, sufficient for that purpose, without the aid of the *3d section;* and it is evident, that that section is as strong, in terms, as our own. In regard to this, he remarks: "But, apart from a comparison of the several sections, if we look to the reason and object of the whole law, we find that creditors are equally within its perview, and have been so considered in the interpretations of these statutes in England and the United States. These interpretations show the reason of the law, from which it is evident that notice is equivalent to registration as to all persons. This becomes perfectly apparent, when we look at the common law, the evils which were likely to result from the statute of uses, and the remedy which the registry act had in view."

And it was held in that case, (Judge CLAYTON dissenting) that notice is equivalent to registration, as to all persons: that unregistered deeds shall not be avoided in favor of creditors with notice ; and that possession is sufficient notice to every one of the conveyance to, or title of, the occupant.

In a later case, (*Taylor et al. vs. Echford*, 11 *Sm. & Mar.* 21,) the same question came up for consideration, and Judge CLAYTON, who had dissented from the opinion in *Dixon & Starkey vs. Doe, &c.*, delivered the opinion of the court, and upon this point said : "The sale of the lot, as the property of J. J. Humphries, passed no title. He had sold and conveyed his interest, many years before the judgment was rendered. The lien of the judgment could not extend beyond the actual interest of the debtor.

The possession of the vendees was notice of their right, in the absence of the registration of his conveyance. The failure to record the lease, or the assignment, could have no effect upon the title of Clifford, in favor of purchaser with notice."

In *Wiley vs. Hightower*, 6 *Sm. & Marsh.* 345, the same question came up on an issue between the prior unregistered title, and that by purchase, under a junior judgment lien ; and it was held, that possession is notice to the purchaser, at execution sale, of the title of the party in possession ; though he had no deed to the property, or other title of record.

In *Neal vs. Kew & Hop*, 4 *Geo. Rep.* 169, after an able investigation of this question, Judge LUMPKIN said : "Numerous adjudications can be adduced in support of the position, that an absolute conveyance to a purchaser, though not recorded within the time prescribed, transfers the title to the land, free of subsequent judgments."

Without a more particular reference to other adjudications to the same effect, it may suffice to say, that in *Colby vs. Kemston*, 6 *New Hamp.* 262; *Webster vs. Mattax*, 6 *Maine* 256; *Jackson vs. Post*, 15 *Wend.* 588, and *McLouth vs. Rathbone*, 19 *Ohio* 21, it has been held that notice, by possession, is equivalent to registry notice. On the other hand, the decisions of the courts of Tennessee, Pennsylvania, Kentucky, and, as to mortgages, also in Ohio, although not uniform, and in some of these States, quite contradictory, may be said to hold a different rule, and deny that actual notice of the prior incumbrance, or purchase, will affect the rights of the judgment lien or attaching creditor. *Hervey & New vs. Champion*, 11 *Humph. Rep.* 570; *Jacques vs. Weeks*, 7 *Watts* 261; *Edwards vs. Brinker*, 9 *Dana* 69.

The case of *Hervey vs. Champion*, was made without reference to authority, either by the counsel or the court. *Jacques vs. Weeks*, was decided upon what we conceive a misapprehension of the interest acquired by the creditor in the debtor's property. The court says : "It would give the mortgage priority over the judgment, and take away the value of the judgment to the amount

of the mortgage. Now the office of the lien is not to cut away prior incumbrances, but to guard against incumbrances; not to create an interest in the estate, but to prevent an after interest from being acquired to the prejudice of the judgment creditor. Admit, then, that such is the effect produced upon the judgment, that is, that it is postponed to the rights of an elder claim upon the property; this, if unattended with fraud, is what is just and right, and of which the junior lien creditor has no right to complain. It is worthy of remark, too, that in this case the court was divided in opinion, and a most able and searching dissenting opinion delivered.

*Brinker vs. Edwards* was decided without argument or authority, by a court that has repeatedly changed its opinions upon this question. See *Helm vs. Logan's heirs*, 4 *Bibb*. 78; *Morton vs. Roberts*, 4 *Dana* 258, in which it was held that subsequent notice would bind the judgment creditor.

After a careful consideration of this question, in view of the object intended to be effected by the registry act, the statutes of England, and the statutes in the different American States, varying, in some instances, in language, but all evidently intended for the same common purpose, and the almost uniformly liberal construction, which the courts have given to them, we do not feel at liberty to depart from the spirit of these decisions, which look beyond the mere letter of the act, and give it such an interpretation as to protect the innocent purchaser and creditor from fraud, but at the same time never to allow a fraud to be perpetrated under cover of the statute. Should we go back to a literal construction of this act, we might, with the same propriety, indulge in a like limited construction of our statute of frauds, to which, like those of other States and of England, we have given a liberal construction; indeed, so uniformly has this construction been given to both these statutes; and also, to some others of like class, that the law and its judicial interpretation, are so delicately interwoven, and rights so spring into life under them, that a change in the decisions would be, in effect, a repeal of the

act itself. Thus considered, we hold that upon a liberal and fair construction of our statute, judgment creditors are, alike with subsequent purchasers and mortgagees, affected by notice of a prior unregistered deed, or contract, touching real estate, and that notice is equivalent to registration, as to all persons.

This brings us next to consider the time when such notice shall be given. As the whole purpose for which notice is required to be given, is to prevent fraud, it necessarily follows that it should be given at a time when it may effect this purpose. For instance, as between contracting parties, the notice should be given before the contract is consummated; because, by concealing the existence of the prior contract, or conveyance, the purchaser may be induced to consummate a contract, which, with notice, he would decline to make.

And for a like reason, notice to the judgment creditor can only be necessary at such time as his rights may be affected without it. Notice, therefore, could be of no use before judgment, unless with it he would decline, like the purchaser, to take such judgment. And this, we have seen, would not be the case; because, until after the judgment, his lien rights have no existence, and whether with or without notice of the incumbrance upon the property when rendered, the judgment lien would attach as a mere gratuity conferred by law, and for which he pays nothing. He is, therefore, at this time, not to be likened to a purchaser contracting for a lien; indeed, it is very questionable, whether he himself ever can be said to bear that relation to the debtor. Because, as we have repeatedly held, he never acquires by the lien any interest whatever in the property. The lien is a quality added to the judgment to hold the property of the debtor for a given time, (unless displaced or abandoned,) free from future incumbrances. The judgment lien certainly has no more potency to communicate title to the creditor, than a levy of an execution would have, and we have often held that the debtor was not divested of title to his property by force of the levy. The early doctrine, with regard to the effect of a levy, has been long overruled

by nearly all of the courts in America, and this court, in thus holding, has but conformed its decisions to the established American doctrine. As held in *Atwood vs. Pearson, 9 Ala. Rep.* 656, after a levy, although the property is in custody of the law, the title to it remains in the debtor, and the officer of the law, who has it in custody, acts, in fact, as the agent of the debtor, sells the property as his, and conveys the title from the debtor to the purchaser. The relation of vendor and purchaser, may more properly be said to exist between the purchaser at the sheriff's sale and the debtor, than between the creditor and the debtor.

We have had occasion to examine the case of *Daniel vs. Sorrells*, and one or two others, which would seem to hold that notice should be given to the creditor before judgment; after which he is treated as one having an interest in the property, and that such interest is communicated to the purchaser. In *Daniel vs. Sorrells* it was said, that the purchaser might protect himself against the claim of one holding under an unregistered deed, even though at the time of his purchase, he had notice of such deed. If this be true, it must be because the lien vests in the creditor such interest in the property, as not only to cut off and prevent all future incumbrances; but also all prior unregistered conveyances and incumbrances. Thus giving to the lien an effect never contemplated by the act, by making it, in effect, retrospective, as well as prospective, in its operation; and dispenses with the necessity of any notice whatever to the purchaser, and makes him stand in the relation of purchaser from the creditor.

This class of decisions is not only in opposition to the spirit, intent, and legal effect of the lien, but is also wholly irreconcilable with another class of decisions, that makes notice to the purchaser a protection to the title of one holding under an unregistered deed. They place the purchaser, at a judicial sale, upon the same footing with a purchaser from the debtor himself. The debtor is only restrained by the lien from subsequent sales or incumbrances, and the purchaser, but for these, would acquire a good title against all prior conveyances of which he had no notice at the

time of his purchase. Such is precisely the situation of the purchaser at a judicial sale, as held by repeated adjudications.

Thus, in *Lesse of Scribner vs. Lockwood*, 9 *Ohio Rep.* 184, the contest, (as in the case now before us,) was between a purchaser, who held under a prior unrecorded deed, and a purchaser at sheriff's sale; no notice was given to the purchaser until after sale and payment of the purchase money, and the confirmation of his sale by the court, but before the sheriff's deed had been executed and filed for record, the first deed was recorded. The question was, whether this was sufficient to affect the purchaser with notice; and the court, fully recognizing the doctrine of notice to the purchaser, and its effect upon him, if given at any time before the sale, concluded by saying: "The conclusion at which we have arrived, is that, inasmuch as the deed from Daniel to Uriah Scribner, was not recorded until after the levy, sale, and confirmation by the court, and the payment of the purchase money by Townsend, the delivery of the deed as consequent on these proceedings, was a mere formal act, and that the title of the defendant, therefore, takes precedence to that of the plaintiff."

The rule of notice to the purchaser was recognized by the same court in *McLouth vs. Rathbone*, 19 *Ohio Rep.* 21.

The Supreme Court of Alabama, in *Ohio Life Insurance Company vs. Ledyard*, 8 *Ala. Rep.* 866, held that a purchaser, at a judicial sale, without notice of a prior unregistered deed, is a purchaser for a valuable consideration, within the meaning of the registry acts. Such, also, was the decision of that court in *Powell vs. Alford*, 11 *Ala. Rep.* 318.

In *Dixon & Starkey vs. Doe*, &c., it was held by the Supreme Court of Mississippi, that both creditors and purchasers are affected by notice of a prior unregistered deed.

In *Ellis vs. Tously*, 1 *Paige Rep.* 280, it was held that if a purchaser under the judgment has notice of the equitable title, before his purchase, and the actual payment of the money, he cannot protect himself as a *bona fide* purchaser. And in *Jackson vs. Post*, 15 *Wend.* 588, the previous decisions of the court

were reversed, and the rule as to the time when notice shall be given to protect the purchaser, under the prior unregistered deed, definitely settled. The court in that case said: "The object of the recording act is to give notice to all the world that the title has passed from the vendor to the vendee. If the vendee neglects to record his deed, in consequence of which another person purchases *bona fide*, such vendee, so neglecting to record his deed, loses his title; but if the second purchaser has actual notice of the first conveyance, he is not a *bona fide* purchaser. The record of the first deed is constructive notice of the fact of the existence of the deed: if, however, actual notice has been given to the second purchaser, he cannot complain of the want of constructive notice. Notice to the second purchaser, whether actual or constructive, that the land has been previously sold and conveyed, deprives him of the character of a *bona fide* purchaser. When this case was before the court formerly, as reported in 9 *Con.* 120, the preceding point in the decision of *Jackson vs. Town* was cited, and apparently relied on. It was unnecessary to resort to that ground, as it appeared then, as it does now, that Ten Eyke, when he purchased, had full notice of the previous deed of the plaintiff. His sheriff's deed had the same force and efficacy, as a quit-claim from Merrick, of the same date, would have had, and having notice, he purchased with as full a knowledge of the plaintiff's deed as if it had been recorded. In such cases, we consider the lien of the judgment as of no force by way of giving priority; it is the sale under the judgment which is effectual, and the lien is not regarded as an incumbrance, but only as an ingredient in the conveyance."

This decision is so fully to the point, that we have made an unusually full quotation from it, and we need only add, that with the other cases cited, it fully sustains the former decision of this court in *Trapnall & Watkins vs. Wassell*, 15 *Ark. Rep.* 73, in which Trapnall, as purchaser at judicial sale, was held to be affected by notice of the prior incumbrance in favor of Wassell.

Authorities have been cited by the plaintiffs, to show what the

rule is in cases of attaching creditors, and by analogy, they contend that the same rule should be applied to judgment creditors. We have looked into these decisions. They are made by the courts of Massachusetts and Maine, in neither of which are judgments liens upon the real estate of the creditor. Those decisions rest essentially upon the ground of the interest which the execution or attaching creditor has in the property by force of a levy. The old doctrine, that a levy upon goods, or an *extent* upon lands, divested the debtor of title to the same, prevails in these States. This doctrine was considered in this court, in *Whiting & Slark vs. Beebe*, and *Trapnall vs. Richardson, &c.*, and expressly overruled. The title to the property, whether real or personal, when levied upon, remains in the debtor, and does not pass to the creditor in satisfaction of his debt, as it did by the English process of *extendi facias*, adopted and in use in these States. We cannot, therefore, give these decisions weight in determining the effect of the judgment lien, or as to when the notice should be given. And for like reasons, the decisions of the courts of New Hampshire, Rhode Island, Connecticut, Vermont, Kentucky, Virginia, and North Carolina, should be received with due allowance, from the fact that they have no statutes making judgments a lien upon the debtor's property. In most of them, a lien attaches upon the issuing or the levy of the execution, and in Virginia and North Carolina the creditor may sue out an *elegit*. How far the decisions of these courts may have been influenced by the supposed effect which the levy of the execution had in divesting the debtor of title to the property, or of communicating it to the creditor, it is difficult to determine. But, upon due consideration of these, and the evident conflict of opinions between the courts in the States, in which, by statute, judgments are declared to be liens upon the debtor's real estate, if left to the weight of authority alone, we should feel at much loss to determine at what time the notice should be given, or in fact for what practical purpose it should be given to the creditor at all. One of two alternatives is left us : we must either give such potency to the judgment lien, as

to let it cut its way over all deeds, securities, or conveyances, whether in law or equity, that are not registered at the date of the judgment, wholly irrespective of notice, and thereby leave the statute, that was enacted to prevent fraud, an engine in the hands of sharpers in the law, to enable them to perpetrate it. In which event, the whole question of notice, whether to the creditor or the purchaser is discarded: because, all such titles are swept off as fraudulent, by the mere failure to put them of record, and the purchaser relies upon the perfect title, thus communicated, by force of the lien; or we must adhere to the liberal construction, which, with a few exceptions, is universally given to such statutes; and hold that, as the sole purpose of the statute was to prevent fraud by secret conveyances, any notice given at any time before the fraud is perpetrated, as it accomplishes all that the statute was intended to accomplish, shall be held as equivalent to registry notice. Under all the circumstances, we think it safest to adopt the latter alternative.

And with regard to the time when the notice should be given, we can see no reason for giving it before the judgment, or at any intermediate time, between then and the sale. The levy of the execution in no wise displaces or affects the lien. So far from this, its effect is to extend the lien also to the personal estate. It is true that the levy is an election to make the debt out of the particular property taken in execution; but the general lien is not thereby displaced, and if upon sale the property levied upon is found to be insufficient to pay the debt, the creditor has his recourse at once to any amount, or all of the remaining property subject to sale, if necessary, in order to make his debt. Up to the time of sale, then, there would seem to be no necessity for giving notice to any one. But when the property is about to be sold, the creditor, as well as the purchaser, has a right to know what encumbrances there are upon it. Public policy requires this, to prevent a sacrifice of property, and the interest of the creditor in making his debt, as well as an assurance to the purchaser, that he buys clear of all titles not made known to him at

that time, requires it.   And if notice of the prior incumbrance is not then given, as well to the creditor as the purchaser, the actual notice, substituted in the place of the registry notice, is not as broad and full; and, consequently, cannot be received instead of such registry notice, and both the creditor and purchaser may rely upon the statute, that declares all deeds, &c., of which notice is not given, void as against them.

And although the purchaser at such sale, by virtue of the statute, gets a perfect title to the property purchased, free from all incumbrances, of which notice is not given, it is not because the lien attached in the first instance to a perfect unincumbered title, or that such title was in fact in the debtor at the time of the sale, but because the first purchaser, notwithstanding his superior title, failed to give notice of it.   Wherefore, it was, by force of the statute, swept off as fraudulent, and left the title in the purchaser as perfect as if the prior conveyance had never been made.

On the other hand, if notice is given at the time of the sale of the property, the creditor has no just cause of complaint, even though the property may sell for less by reason of such incumbrance, because the lien, in the first instance, only attached to the property with its incumbrances, and when sold with notice of them, no fraud is perpetrated, either upon him or the purchaser: because, he still gets all that the lien was ever intended to protect, that is the real value of the property with its incumbrances at the time the lien took effect.   And no wrong is done the purchaser, because, with notice, he buys the property, charged with the incumbrance, and bids with a view to its diminished value in consequence thereof.

Having thus disposed of the questions of law arising in this case, before applying them, we will briefly review the facts of the case. They are, for the most part, free from all doubt.   There is no question but that John Engles bought the land in dispute from the judgment debtor, Harvey Engles, long before the judgment, under which the plaintiffs claim as purchasers, was rendered, and paid him for it, and took a valid deed of conveyance for the land,

and was in possession of it, but failed to file his deed for record in the proper office until after the judgment was rendered; and also, until a few days after the execution thereon had been levied upon the land. It is in proof, and is not controverted, that the plaintiffs hold by deed under regular and valid proceedings under the judgment as purchasers at judicial sale. That the plaintiffs were the attorneys for the plaintiff in execution, and that Byers, one of them, bid off the land.

The evidence, with regard to notice at the time of the sale, is that about the time the sheriff proposed selling the land, the defendant, in an ordinary tone of voice, declared that the land was his. The witness distinctly heard the declaration, and witness Fairchild says that Byers was standing near to the sheriff at the time the claim was made; that the defendant was about fifteen feet from the sheriff, and spoke sufficiently loud for those around to hear him. When we consider that Byers was the attorney, engaged in the collection of the debt, and that the sheriff had proclaimed that he was about to sell the land, and that the defendant's claim set up was in response to the offer to sell, we think it altogether improbable that Byers failed to hear what was said. It is true that the defendant did not produce his deed; nor was any inquiry made with regard to the character of his title. Under all the circumstances, we think this notice sufficient. Certainly it was sufficient to have put a prudent man upon inquiry.

With regard to the occupancy, the facts are substantially as follows: Witness stated that he was well acquainted with the parties to the suit, and well acquainted with the land in controversy. That the defendant had had it in possession since the year 1845. There were about thirty acres of cleared land upon the tract: it was good bottom land, and worth $2 per acre rent per annum, from the first of January, 1850, until the present time, (the time of trial). There was no building upon the land. The houses were near the line, on an adjoining tract, and were occupied by the father, mother, and family of defendant, who is a

single man, and resided with them. Witness once owned the life-estate of the father and mother in the land, and turned it over to defendant, who agreed to take the place of witness, and take care of their father and mother during their life. The land lay two miles from Batesville ; was cultivated in 1845, by witness, and the only other proof, with regard to the persons who cultivated afterwards, was the evidence of Desha, who says, that the defendant, and the other children, lived in the houses, and that the land was cultivated by some of them.

This is, substantially, the evidence with regard to possession, and although the witness states, in unqualified terms, that defendant was in possession since 1845, when we come to consider the real situation of the parties, it is quite probable that a stranger might well have supposed the father and mother the head of the family, and the owners of the land, and the children, including defendant, residing with them, and cultivating it for them. There is no evidence that the judgment debtor, Harvey Engles, ever was in possession of the land. The evidence is not very clear with regard to the nature of a life-estate, which witness says he owned, and turned over to defendant, in consideration that he would take care of their father and mother. Witness, whilst he held this estate, cultivated the land in 1845, and he says he turned it over to defendant, who had possession of it after that time. Under all the circumstances, we think it probable that Harvey Engles, the judgment debtor, never had possession of the land, nor was he entitled to the possession, on account of the life-estate owned by the defendant, who took the life-estate in 1846, and entered into possession of the land, charged with the support of his parents. The witness says he was in possession since 1845, and it is in proof, that he was still in possession at the commencement of this suit.

In the absence of all evidence, therefore, tending to show that the judgment debtor ever was in possession of the land, or that the defendant held under him, we must consider the defendant in possession, and holding adversely at the time the judgment

was rendered, and so continued until after the purchase at sheriff's sale by the plaintiff. This was sufficient notice, both to the creditor and the purchaser, and not only at the day of sale, but also before the date of the judgment, as held by many of the authorities cited in this case, and also as expressly decided at the present term of this court in the case of *Hamilton vs. Fowlkes et al.*

Independent of this, we think the notice given to Byers, the purchaser, at the time of the sale, amply sufficient, and as he was the attorney of record conducting the sale, notice to him was also notice to the judgment creditor. As a necessary consequence, therefore, it follows that the defendant's title, which was in all respects regular and of older.date, and of which due notice was given, must prevail over the title acquired under the judgment lien of subsequent date. Let the judgment be affirmed.

NOTE, by the Clerk.—Mr. Chief Justice ENGLISH announced that he dissented from the opinion of the court in this case: holding that, under our statute, actual notice of an unrecorded deed would not be good and valid against the judgment creditor, or one claiming under the judgment, unless given before the judgment was rendered: that unless the deed be recorded, or notice of its existence be given to the creditor at or before the rendition of the judgment, the judgment would be a lien upon the land, which could not be displaced by subsequent registration or notice: but has filed no written opinion.