## NEWMAN *v.* DAVIS and others.

*(Circuit Court, E. D. Arkansas.* August 1, 1885.)

1. EXECUTION SALE—TITLE ACQUIRED BY PURCHASER.

In Arkansas a judgment creditor purchasing land at execution sale, on his own judgment, acquires the title and the rights of a *bona fide* purchaser for value against third persons claiming the same through the judgment debtor by secret trusts, or unrecorded instruments, of which he has no notice, actual or constructive, before the sale, and he buys subject to all the equities and rights of third persons, of which he has actual or constructive notice before he purchases.

In Equity.

In 1876 the plaintiff and Charles H. Carlton jointly purchased, and paid for, the plantation in controversy. The deed for the plantation, which was recorded, was made to Carlton alone, who gave the plaintiff a written paper stating he held the legal title to an undivided half of the plantation in trust for the plaintiff. This paper was not acknowledged or recorded. On the twenty-eighth of July the defendants Davis and Gaines recovered judgment in the circuit of Chicot county—the county in which the lands in controversy lie—against Carlton for $1,357.26. Executions were issued upon the judgment, which were levied on the plantation purchased by the plaintiff and Carlton, as the property of the latter, and upon a sale of the property on said executions the defendants Davis and Gaines became the purchasers for $1,005, and after the expiration of the year allowed by law for redemption, received a deed for the property. On the seventeenth day of April, 1879, Dowdle recovered judgment in this court against Carlton and Street for $2,120.73. Chicot county is in this district, and this judgment was a lien on the real estate of Carlton in that county. Execution issued on this judgment, upon which the same plantation was sold on the sixth of February, 1880, and purchased by Street for $625. The lien of this judgment being prior to that of the judgment of Davis and Gaines, the latter, on the tenth day of July, 1880, purchased Street's certificate of purchase, paying him therefor $718.75, and took an assignment of the same, and afterwards procured a deed thereon, for the premises, from the marshal.

The bill seeks to establish and quiet the plaintiff's title to an undivided half of the plantation, as against the defendants Davis and Gaines, whose title was acquired in the mode above stated. The bill alleges the defendants, including Street, had notice of the plaintiff's equitable title to half of the lands before they purchased them at the execution sale, and that they had the like notice before purchasing Street's certificate of purchase. The bill did not waive an answer under oath; and the answer, which is under oath, denies explicitly any notice to Street or the defendants of the plaintiff's equitable title to the undivided half of the plantation, until after the defendants had

v.24F,no.11—39

purchased at execution sale, and from Street, and procured their deeds under said purchase. The plaintiff was at no time in possession of the land. It is clear from the evidence that neither the plaintiff nor Street had any notice, actual or constructive, of the plaintiff's equity in the land until after they purchased the same, and that they purchased believing Carlton was the sole owner of the plantation.

*D. H. Reynolds*, for plaintiff.

*Dodge & Johnson*, for defendants.

CALDWELL, J. Section 671 of Mansfield's Digest reads as follows:

"No deed, bond, or instrument of writing, for the conveyance of any real estate, by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for valuable consideration, without actual notice thereof; or against any creditor of the person executing such deed, bond, or instrument obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex officio* recorder in the county where such real estate may be situated."

In view of this statute, which has been in force since 1846, and the exposition of it by the supreme court in 1855, it is remarkable that the law applicable to the facts of this case should, at this day, be considered doubtful. It is believed that when due consideration, is given to the statute, and the cases on the subject are read in the light of the statute, which at times seems to have received too little consideration, the doubt and mist that hang over the question will, in a great measure, disappear. This section came before the supreme court of the state for construction, in the case of *Byers* v. *Engles*, 16 Ark. 543. The action was ejectment, and the facts were that the defendant, Engles, bought the land from the judgment debtor, and paid for it, and received "a valid deed of conveyance" for the same, and entered into possession under his deed before the judgment against the former owner on which the land was sold was rendered; but the defendant's deed was not filed for record until after the judgment was rendered, and the execution had been levied on the land. The deed was filed, and the plaintiff had both actual and constructive notice of the same, before he purchased at execution sale. Construing the statute in the light of these facts, the supreme court said:

"The question is, shall we give this statute a literal construction, by which judgment lien creditors will override all incumbrances or conveyances not of record at the time judgment is obtained, wholly irrespective of any actual notice which the judgment creditor may have; or shall we place this class of creditors upon the same general footing of creditors who contract for liens and hold actual notice equivalent to registry notice in all cases? * * * Thus considered, we hold that, upon a liberal and fair construction of our statute, judgment creditors are, alike with subsequent purchasers and mortgagees, affected by notice of a prior unregistered deed or contract touching real estate, and that notice is equivalent to registry as to all persons. * * * Up to the time of sale, then, there would seem to be no necessity for giving notice to any one. But when the property is about to be sold, the creditor, as

well as the purchaser, has a right to know what incumbrances there are upon it. Public policy requires this, to prevent a sacrifice of property; and the interest of the creditor in making his debt, as well as an assurance to the purchaser that he buys clear of all titles not made known to him at that time, requires it. And if notice of the prior incumbrance is not then given, as well to the creditor as the purchaser, the actual notice substituted in the place of the registry notice is not as broad and full; and consequently cannot be received instead of such registry notice, and both the creditor and purchaser may rely upon the statute, that declares all deeds, etc., of which notice is not given void as against them. And although the purchaser at such sale, by virtue of the statute, gets a perfect title to the property purchased, free from all incumbrances, of which notice is not given, it is not because the lien attached in the first instance to a perfect, unincumbered title, or that such title was in fact in the debtor at the time of the sale, but because the first purchaser, notwithstanding his superior title, failed to give notice of it. Therefore it was by force of the statute swept off as fraudulent, and left the title to the purchaser as perfect as if the prior conveyance had never been made."

In *Jackson* v. *Allen*, 30 Ark. 110, the court say:

"The second question was decided in *Byers* v. *Engles*, 16 Ark. 543. True, in that case the chief justice dissented, but he was overruled by a majority of the court, and the case having stood unreversed for about twenty years, repeatedly followed, and involving a rule relating to title of real property, we are disposed to treat it as settled law."

These remarks are repeated in *Pindall* v. *Trevor*, Id. 249. Prior to the decision in *Byers* v. *Engles*, it was not known when the lien of a judgment creditor attached, and became paramount to the rights of persons claiming by "deed, bond, or instrument duly executed and acknowledged," but not recorded; whether it was upon the rendition of the judgment, levy of execution, or at the sale on execution; nor was it known whether the judgment creditor was bound by actual as well as constructive notice of such instruments. These questions were settled in that case by the court holding that the title of one who purchased land and received a deed "duly acknowledged," but which he failed to file for record until after the rendition of the judgment against his vendor, and the levy of execution on the land, will prevail over the title acquired by the purchaser at execution sale, if such purchaser had actual or constructive notice of the existence of such deed before he purchased; but that in such case, if the purchaser at the execution sale has neither actual nor constructive notice of the prior conveyance, he "gets a perfect title to all the property purchased." On this last point the court was very explicit, as will be seen by reference to the last paragraph herein quoted from the opinion; and it is not perceived how the court could have reached any other conclusion, in view of the peremptory language of the statute. Nothing is said in the case of *Byers* v. *Engles* as to the effect upon the judgment creditor of notice in fact of a secret trust, or a right claimed under a defectively acknowledged instrument, or an instrument in which the land intended to be conveyed is wrongly described. This case did not call for any expression on those points; later cases did.

The case of *Allen* v. *McGaughey*, 31 Ark. 252, decides that a purchaser from the judgment debtor, in possession under a deed in which the land, by mistake, is wrongly described, has a better right than the judgment creditor who purchased at execution sale with knowledge of these facts. Expressions that go beyond this were not necessary to the decision of the case. The same may be said of the case of *Pindall* v. *Trevor*, 30 Ark. 249, and *Williams* v. *McIlroy*, 34 Ark. 85. The statute, taken literally, gives the judgment creditor preference over the purchaser from the judgment debtor, unless the latter holds by "deed, bond, or instrument duly executed and acknowledged." But, in the cases last cited, the doctrine of *Byers* v. *Engles*, as to the effect upon the purchaser at execution sale of notice in fact of the claims of third persons founded on deeds "duly acknowledged," was extended, and applied to notice of any equity or right which the third person could have successfully asserted against the judgment debtor. In these cases (*Pindall* v. *Trevor*, *Allen* v. *McGaughey*, *Williams* v. *McIlroy*) the purchaser at execution sale had notice of the rights or equities of the third party before his purchase. These cases would doubtless have been decided the very converse of what they were, if the purchaser at the execution sale, when he purchased, had had no notice, actual or constructive, of the third person's equities. Such must have been the ruling, if any effect is to be given to the plain words of the statute. The law of this state on the subject, in the light of the statute and the decisions, is that a judgment creditor purchasing land at execution sale, on his own judgment, acquires the title and the rights of a *bona fide* purchaser for value, against third persons claiming the same through the judgment debtor, by secret trusts or unrecorded instruments, of which he had no notice, actual or constructive, before the sale; and that he buys subject to all the equities and rights of third persons, of which he has either actual or constructive notice at any time before the purchase. As thus formulated, the rule in this state is in harmony with the general doctrine on the subject, which is that a purchaser at execution sale is protected to the same extent as if he were purchaser at private sale, from claims previously acquired by third persons from the judgment debtor, of which he had no actual or constructive notice. Freem. Judgm. § 366; Freem. Ex. §. 366.

In some of the states the question has arisen whether the judgment creditor shall be regarded as a purchaser for value, and protected by the registry laws from infirmities in the debtor's title, of which he had no notice, actual or constructive, at the time of the purchase. The authorities are not uniform on this question. Freem. Judgm. § 366*a*. But this question is settled in this state by the statute, which plainly gives a judgment creditor preference over secret equities and unrecorded instruments, of which he has neither actual nor constructive notice before his purchase at execution sale.

In the case at bar, Street purchased the land under the senior judg-

ment without notice of the plaintiff's equity, and the defendants Davis and Gaines purchased from Street for a valuable consideration without notice, actual or constructive, of the plaintiff's equities. They are, therefore, *bona fide* purchasers for value, without notice, independently of the purchase under their own judgment.

Undoubtedly there are expressions in the opinion of the court in *Allen* v. *McGaughey, supra,* and in other cases to which reference has been made, which, taken by themselves, would seem to support the plaintiff's contention that a purchaser at execution sale acquires no other or greater right than the judgment debtor possesses, and that he takes the land charged with all the equities that might be asserted against the judgment debtor, whether he had or had not notice of the same. But these general expressions were not necessary to the decision of the case, and must be read in the light of the facts of the case the court was deciding. In the later cases, to which reference has been made, the statute seems to have been overlooked. It is not cited, and the reasoning is not given, and is not very obvious, by which the conclusion is reached that under the statute the judgment creditor is bound by actual notice even of secret trusts or defectively acknowledged instruments.

To carry the doctrine to the extent claimed by the plaintiff in the case at bar, and hold that the judgment creditor is bound by secret trusts and unrecorded instruments of which he has no notice at the time of his purchase, would be, in effect, a judicial abrogation of the statute.

Carlton, without the knowledge or consent of the defendants, put upon record, long after the sales of the lands on the executions, a deed of trust disclosing the plaintiff's equity in the lands, and providing that his (Carlton's) interests in the lands might be sold to pay the judgments against him, upon which the land had already been sold. This deed of trust originated with Carlton. It was made without the knowledge or consent of those named as beneficiaries, and was to their prejudice, was never accepted by them, and cannot impair their rights.

Let a decree be entered dismissing the bill for want of equity.