SCOTT *v.* HOUPT.

Opinion delivered November 19, 1904.

1.  CORPORATE STOCK—FAILURE TO DEPOSIT TRANSFER WITH CLERK—NOTICE.—Under Sandels & Hill's Digest, section 1338, providing that a certificate of transfer of stock in a corporation shall be deposited with the county clerk, and that "no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited," a transferee of corporate stock whose transfer has not been deposited with the clerk cannot hold the stock as against attaching creditors of his transferrer, although such creditors had notice of the transfer prior to the completion of their levies and prior to a sale under judgment rendered in the attachment suits. (Page 88.)

2.  ATTACHMENT—SUFFICIENCY OF LEVY.—A return upon a writ of attachment showing that the officer levied upon all corporate stock belonging to the debtor was sufficient where the officer was unable to specify the particular stock levied upon on account of the refusal of the secretary of the corporation to permit an examination of the corporation's stock book, and such return may subsequently be amended so as to describe the stock levied upon. (Page 93.)

3. CORPORATE. STOCK—DEPOSIT OF TRANSFERS.—Where a person subscribed for 7984 shares of the stock of a corporation, but paid for only 2000, and the remaining shares were treated by the corporation as treasury stock, and were issued directly to the subscribers as they paid in their ·subscriptions, the latter did not acquire their stock from the original subscriber, and were not required to deposit with the county clerk a transfer from him, in order to protect their shares from his creditors. (Page 93.)

4. SAME—EFFECT OF DEPOSITING WITH CIRCUIT CLERK.—The requirement of Sand. & H. Dig., § 1338, that a certificate of transfer of stock in a corporation shall be deposited with the *county* clerk is not complied with by depositing it with the *circuit* clerk, in a county where the offices of county and circuit clerk are separate. (Page 94.)

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Chancellor.

Reversed in part.

Reb Houpt, H. D. Hill and N. C. Foster Lumber Company brought suit in equity against Ed Hogaboom, Arkansas National Bank, State Exchange Bank, Park Hotel Company, W. T. Joyce, E. F. Klein, George C. Ball, Moses P. Hays, John West, Adolphus Busch, Abner Gile, M. A. Lynch, F. J. Allen, R. C. Brown, Phillip Riley, R. E. Jackson, Graeme Stuart, Mrs. A. W. Greenway, John Knickerbocker, James H. Weed, John J. Lawrence, Fannie Eisele, John Martin Lumber Co., and all others interested. The complaint alleged the institution of attachment suits by plaintiffs and by the Arkansas National Bank and State Exchange Bank against Hogaboom and the recovery of judgments therein. That plaintiffs sued out attachments, and had them levied on the stock of Hogaboom in the Park Hotel Company, a corporation; that Hogaboom was the owner of 5,889 shares of the stock of said company, and in addition thereto was entitled to 1,480 shares which had not been issued to him; that 5,285 of the shares alleged to belong to Hogaboom appeared on the books of the hotel company to have been transferred to defendants; that 604 shares appeared on the books in the name of Hogaboom; that the transferees of the aforesaid shares failed to deposit certificates of transfer with the county clerk of Garland County, as required by Sandels & Hill's Digest, section 1338; that they were claiming title

to the stock, and had combined together to assert title thereto and object to its sale, and to deter persons from bidding therefor; that the priorities between the attaching creditors were undetermined. The bill prayed that the prior transfers of the stock made by Hogaboom be declared void, and that the stock be sold and the proceeds distributed among the creditors according to their priorities.

By an amendment to the complaint plaintiffs alleged that the 604 shares of the Park Hotel Company, standing in Hogaboom's name, had been sold, and were bid in by judgment creditors for $606; that the original capital stock of the hotel company was $200,000; that Hogaboom subscribed for 7,984 shares of $25 each; that the stock was afterwards increased to $400,000, and that Hogaboom subscribed for the increase; that it was uncertain how much of said stock had been issued to Hogaboom. The prayer of the original complaint was repeated.

The Arkansas National Bank, the State Exchange Bank and D. H. Kochersperger, judgment creditors of Hogaboom, joined in the prayer of the complaint.

The defendant stockholders, whose stock was involved in the controversy, filed answers, respectively, in which they severally set out the stock owned by them. They denied that any valid order of attachment was issued or levied upon the shares of stock owned by them in the Park Hotel Company.

M. P. Hays, John West, M. A. Lynch, F. J. Allen, R. E. Jackson, Graeme Stuart, John Knickerbocker, A. Gile's executors, the appellants, and other stockholders of the Park Hotel Company, further answered that they severally acquired the stock held by them in the Park Hotel Company long prior to the issuance of the orders of attachment against the defendant Hogaboom; that they had severally paid full and valuable consideration therefor; that the stock held by them was never owned by Hogaboom, or held by him for them; that he had no title thereto or claim thereon at the date of the institution of said proceedings, and that said stock never stood on the books of the company in the name of Hogaboom.

The defendant, R. E. Jackson, alleges that the stock owned by him in the Park Hotel Company was by him sent to the office of the county clerk for the purpose of having the transfer recorded, and the same was, through mistake of the officer,

recorded in the office of the circuit clerk, without fault on his part, prior to the issuance of the attachment.

The Park Hotel Company for further and separate answer denied that Hogaboom was at the time alleged in the complaint the owner of 5889 shares of the stock of the Park Hotel Company, or that he was the owner of any shares of stock that had not been issued to him.

In the attachment suit by Reb Houpt against Hogaboom, the process was directed to the coroner, Houpt being at the time sheriff of Garland County. The order of attachment was issued on the 1st day of May 1896, and was returnable at the succeeding June term of the court. The return as to the levy upon the stock of the Park Hotel Company was in the following words:

"I have this 1st day of May, 1896, at 3 o'clock p. m., duly served the within writ of attachment by delivering a true copy of the same, together with a written notice specifying the property attached, which notice is as follows:

"'Park Hotel Company: You are hereby notified that I hereby levy on all the shares of stock of said company owned by Ed Hogaboom, R. H. Moore, Coroner,' to E. F. Klein, secretary of the Park Hotel Company, Ed Hogaboom, the president of said company, being absent from said Garland County, and by summoning said Park Hotel Company to answer in this action, the levy under this order being upon 7961 shares of stock in said Park Hotel Company subscribed by Ed Hogaboom and not transferred by him, as appears from the records of Garland County, Arkansas."

In the attachment cases of the Arkansas National Bank and of the State Exchange Bank against Hogaboom the sheriff's return to the attachment showed that he levied upon the entire amount of stock of the Park Hotel Company to which Hogaboom was entitled, and gave written notice of such levy, similar to the above, to E. F. Klein, secretary of the company, in the absence of the president.

During the pendency of the various attachment proceedings against Hogaboom, the plaintiffs therein filed petitions in their respective cases, stating that they had applied to the secretary of the Park Hotel Company for permission to examine the stock books of the company, but that he refused to permit them to make the examination. They asked that the secretary of the Park Hotel

Company be required to produce in court the stock books of the company. This petition was granted, and the sheriff and coroner were permitted to amend their returns to the writs of attachment so as to describe specifically the shares of stock upon which the levy was made. Thereupon the court sustained the attachment in each case.

The finding of the chancellor in the consolidated suit, so far as is material to this appeal, was as follows:

"Certain creditors of Ed Hogaboom seek to subject to the payment of their respective debts the stock held by said Hogaboom as a stockholder in the Park Hotel Company which had not been transferred by him, and a certificate of the transfer of the same filed for record, as provided by section 1338 of Sandels & Hill's Digest of the statutes of Arkansas; and attachment proceedings were instituted by certain creditors of Ed Hogaboom, as appears herein, to subject such stock to the payment of their respective demands, and judgments were obtained for amount due and sustaining the attachment in each respective suit, and the stock ordered sold."

After reciting upon what specific stock the attachments were levied, the court continued:

"In determining the rights of parties herein to such stock, the court finds the facts to be as follows: The company was incorporated ·and articles filed in the office of the county clerk of Garland County on May 8, 1889; that the capital stock of said company was fixed at $200,000, of which amount, the articles of incorporation show that $50,000 was paid into the treasury of the company; that the shareholders appearing from the articles of incorporation were as follows: Ed Hogaboom, ·7,984 shares; E. F. Klein, 4 shares; M. A. Eisele, 4 shares; George W. Baxter, 4 shares; R. B. Bancroft, 4 shares; that at a meeting of the stockholders on September 6, 1890, the capital stock of the company was increased $100,000, making the stock of the company $300,000. The certificate showing such increase was filed for record September 19, 1890, and on April 18, 1891, the capital stock of the company was again increased from $300,000 to $400,000, and the number of shares were increased from 12,000 to 16,000 shares. The certificate of increase was filed for record May 29, 1891; it appears from the certificate showing such increase that

Ed Hogaboom subscribed and paid for all of said increase of stock.

"The court finds that certain shares of stock which had been subscribed for prior to filing the articles of incorporation were paid for by the subscribers direct to the company, to whom certificates therefor were issued after the organization of the company. That the shares of stock originally issued to Ed Hogaboom and by him transferred to others, who failed to have their certificates deposited for record prior to the attachment herein, are as follows, towit: Certificates Nos. 54 and 55, for 200 shares each, issued to Abner Giles May 12, 1891, in lieu of certificate No. 51, which was originally issued to Ed Hogaboom April 20, 1891; certificate No. 77, for 40 shares, issued to Graeme Stuart March 23, 1892, in lieu of certificate No. 69, for 40 shares, originally issued to Ed Hogaboom July 27, 1889; certificate No. 99, for 160 shares issued May 1, 1895, to R. E. Jackson, 120 shares of which were issued in lieu of certificates Nos. 70, 72 and 73, originally issued to Ed Hogaboom on July 27, 1891, and the other 40 shares comprising a part of certificate No. 99, were issued in lieu of certificate No. 82, issued to Ed Hogaboom on April 13, 1892, which certificate No. 82, being in lieu of certificate No. 79, issued to J. J. Sumpter, Jr., on April 6, 1889; certificate No. 72 was issued in lieu of original certificate No. 75, which was issued to Ed Hogaboom on July 27, 1891; that a certificate of transfer of such stock from Ed Hogaboom to R. E. Jackson was filed for record in the office of the circuit clerk of Garland County February 8, 1896, but that the same was not filed in the office of the county clerk of said county until May 2, 1896, after the levy of attachments in the said first two suits in favor of the Arkansas National Bank, and the suit in favor of Reb Houpt against Ed Hogaboom; certificate No. 83, for 40 shares, issued to J. J. Knickerbocker May 23, 1892, in lieu of certificate No. 78, issued to D. S. Place, and assigned to J. J. Knickerbocker; No. 78 being issued in lieu of certificate No. 74, which was originally issued to Ed Hogaboom, and was transferred to D. S. Place.

"The court finds the stock which was not subscribed for before the organization of the company, and which was paid for to Ed Hogaboom, but issued direct to parties now holding the same, as follows, towit: Certificate, No. 41, for 440 shares, issued to Abner Gile March 23, 1891.

"The court finds the shares of stock not transferred by Ed Hogaboom, but isued directly by the Park Hotel Company to parties who paid for same in cash direct to the company, but who were not subscribers, to be as follows, towit: Certificate No. 18, for 200 shares, issued directly to Moses ·P. Hays July 15, 1890, and that he had purchased the same direct from the Park Hotel Company and paid for the same in cash at par to the said Park Hotel Company. Certificate No. 39, for 200 shares, issued direct to F. J. Allen, February 23, 1891; that the said Allen was not an original subscriber for the stock, but paid for the same direct to the company for $5,000; that he purchased the stock direct from the company.

    *      *      *      *      *      *      *      *      *      *

"Whereupon, it is by the court ordered, adjudged and decreed that the following stock in the Park Hotel Company, towit:—Certificate No. 54, for 200 shares; certificate No. 55 for 200 shares; certificate No. 41, for 440 shares, standing on the books of the Park Hotel Company in the name of Abner Gile; certificate No. 77, for 40 shares, standing on the books of said corporation in the name of Graeme Stuart; certificate No. 83, for 40 shares, standing on the books of said corporation in the name of J. J. Knickerbocker; certificate No. 18, for 200 shares, standing on the books of said corporation in the name of Moses P. Hays; certificate No. 39, for 200 shares, standing on the books of said corporation in the name of F. J. Allen—was, at the time of the institution of the several suits by attachment mentioned and set out in the pleadings in this cause, subject to the debts of Ed Hogaboom, by reason of the failure of the persons in whose name said stock stands upon the books of said corporation to file certificates of such transfers in the office of the county clerk of Garland County, in compliance with the provisions of section 1338 of Sandels & Hill's Digest of the statutes.

"And that certificate No. 99, for 160 shares, standing in the name of R. E. Jackson, was and is subject to the lien of the attachments in the cases of the Arkansas National Bank *v.* Ed Hogaboom, numbered 3211 on the docket of the Garland circuit court; the Arkansas National Bank *v.* Ed Hogaboom, Reb Houpt, A. C. Houpt, Henry Houpt and Jake Houpt, numbered 3214 on the docket of said circuit court, and in the case of Reb Houpt *v.* Ed

Hogaboom, numbered.....on the docket of the Garland Chancery Court.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"It is further ordered and decreed that the following stock of the Park Hotel Company, towit: 200 shares represented by certificate No. 54, 200 shares represented by certificate No. 55, 40 shares represented by certificate No. 77, 160 shares represented by certificate No. 99, 40 shares represented by certificate No. 83, 440 shares represented by certificate No. 41, 200 shares represented by certificate No. 18, and 200 shares represented by certificate No. 39—be sold by R. S. Dean, who is hereby appointed a commissioner for the purpose of making said sale," etc.

The defendants, Elsie G. Scott, John J. Paul and F. G. Tiffany as executors of Abner Gile, deceased, and Graeme Stuart, R. E. Jackson, John Knickerbocker, Moses P. Hays and F. J. Allen appealed from so much of the decree as held that the stock owned by them severally in the Park Hotel Company was subject to the claims of attaching creditors of Hogaboom.

The plaintiffs, Reb Houpt, H. D. Hill and N. C. Foster Lumber Company, and the defendants Arkansas National Bank, D.H. Kochersperger and the State Exchange Bank appeal from so much of the decree as held that certain stock of Park Hotel Company was not subject to attachment.

*J. M. Moore* and *W. B. Smith,* for Scott and others.

There was no valid levy on the stock in controversy, in the manner contemplated by the provisions of our statute. *Cf.* Sand. & H. Dig. § § 336, 337, 3057, 3058, 3059. A strict compliance with the provisions of the statute is essential to the validity of a levy. ·1 Ark. 338; 17 Mass. 243. The certificate of purchase should contain the number of shares sold. Sand. & H. Dig. § § 3058, 3059; 83 Tex. 471, 472; 18 S. W. 798; 17 Conn, 268, 269; 33 Mich. 419; 2 Thomp. Corp. § 2793. The notice should be served on the president, or such other officer as is designated by statute Sand. & H. Dig. § 2697.; 64 Ark. 114; 81 Ia. 164, s. c. 46 N. W. 750. The right of a *bona fide* transferee of stock, even though his transfer be not registered in the county clerk's office, will not be defeated by an attaching creditor with notice prior to the sale under his judgment; and, so long as a levy is *in fieri* and incomplete, it will not defeat the claim of such transferee. *Cf.* Sand. &

H. Dig. § 1338; 58 Ark. 252, 256. Sand. & H. Dig. § 728; 16 Ark. 543; 93 Fed. 603; 2 Cook, Corp. § § 486, 490; 9 Ark. 112; 25 Ark. 152; 61 Ark. 127; 28 Ark. 85. When a grantee or transferee of real or personal property tries, in good faith, to comply with the provisions of the registry act, and fails, without fault, to do so, he will be treated as having complied with the law. 28 Ark. 244; 31 Pac. 185; 31 Conn. 25; 6 Mo. App. 464, 465. The court erred in holding that the stock represented by certificates Nos. 41, 18 and 39 was subject to the debts of Hogaboom. 61 Ark 127; 18 Atl. 784; 26 Atl. 882. Further, upon the comparative rights of the transferee and the levying creditor, see: 15 Fed. 501; 11 Wall. 369; 30 Conn. 270; 31 Conn. 25; 3 How. 483; 5 Cal. 186; 68 Cal. 600; 50 N. C. 584; 62 *Ib.* 413; 52 Vt. 73; 52 N. W. 268; 35 N. W. 578; 86 Ky. 408; 78 S. W. 298; 6 Mo. App. 454; 74 Mo. 77; 71 Ia. 270; 81 Ia. 46; 61 Tex. 114; 12 So. 6; 40 Am. & Eng. Corp. Cas. 122; 3 Daly, 219; 48 N. Y. 585; 132 N. Y. 251; 46 N. Y. 332; 34 N. Y. 79-85; 22 Wend 350; 4 Holt's Ch. 167; 6 Whart. 135; 29 Pa. St. 146; 13 Atl. 382; 84 Ala. 382; 1 Am. & Eng. Corp. Cas. (N. S.) 36; 14 Cal. 321; 19 Cal. 213; 71 Ia. 240; 63 Fed. 898; Cook, Corp. § § 487, 489, 404; 160 U. S. 389.

*George G. Latta,* for Arkansas National Bank and State Exchange Bank.

The statute (Sand. & H. Dig. § 1338) requiring that certificates of transfers of stock be deposited with and registered by the county clerk controls this case, and no transfer is valid without such steps being taken. The case in 16 Ark. 546 and others cited by appellants upon this point, while they are authority for a proper construction of Sandels & Hill's Digest, § 728, do not apply to the construction of § 1338. If the legislature had intended to except purchasers of stock with actual notice from the provisions of § 1338 *supra,* it should have done so expressly, as in § 728 *supra.* And, no such exception being expressed, none will be implied. For construction of the statute as to filing of mortgages to perfect their lien (Sand. & H. Dig. § 5091), see: 9 Ark. 112; 18 Ark. 85; 20 Ark. 190; 22 Ark. 136; 32 Ark. 598; 33 Ark. 63; 35 Ark. 62; 39 Ark. 377; 40 Ark. 540; 41 Ark. 191; 42 Ark. 140; 49 Ark. 83; 51 Ark. 417; 54 Ark. 179; 55 Ark. 542;

59 Ark. 280, 293; 61 Ark. 123.   See also construing similar statutes in other States as mandatory; 14 Col. 30; 7 Col. App. 129; 51 Wis. 519; 38 Pac. 253; 71 Ia. 270; 103 Ia. 437; 49 Me. 315; 138 Mass. 240; 138 Mass. 244; 3 Allen, 342; 92 Ala. 382; 87 Ala. 582; 42 N. H. 446; 134 U. S. 401; 91 Ill. 464.   The act of February 28, 1891, repealed Sand. & H. Dig. §§ 336, 337, and they should not have been included in the Digest.   11 Wall, 88; 107 U. S. 445; 134 U. S. 206; 143 U S. 18.

*C. V. Teague,* for Houpt.

Hogaboom owned the 7984 shares of stock, subject to the lien of the corporation, as provided in Sand. & H. Dig. § 1342. 37 Me. 76-83; 46 Mo. 248.   As to what is necessary to constitute a stockholder, see: 46 Barb. 432; 1 N. Y. 423; 25 Ill. 393; 72 Ill. 397; 105 Ill. 578; 14 Bush, 429; 80 N. Y. 219; 139 Mass. 5; 24 N. E. 112; 17 S. E. 305; 17 Atl. 840.   The claimants of this stock are charged with the knowledge of the requirements of the law and the contents of the certificate filed with the articles of incorporation.   16 B. Mon. 4; 35 S. W. 643; 105 U. S. 143; 3 Mich. 91; 29 S. W. 768; 26 N. W. 311; 13 C. C. A. 410; 36 Miss. 572; 15 Gray, 494; Big, Estop. 526, 527; 53 Vt. 130, 143; 77 Ill. 296; 40 Ill. 303; 34 Pa. St. 358; 1 Beach, Priv. Corp. 67. Further as to what constitutes a subscription and creates a stockholder, see: 25 Ill. 293; Clark, Corp. 273, 278; 116 Mass. 471; 40 Me. 172; 18 Barb. 297; 1 N. W. 827; 70 N. W. 302; Thompson, Corp. § 1158; 43 Ind. 265; 24 Md. 563, 599; 27 Pa. St. 261; 6 Mass. 40; 126 Mass. 155; 29 N. E. 218. As to whether it is necessary that certificates be in fact issued see: 3 Wall. 573, 598; 10 Allen, 245; Cook, Corp., etc. 374, 383. The notice and return were sufficiently definite.   8 Pac. 556; 13 S. W. 25; 62 S. W. 270; 11 Pick. 341; 64 Ark. 96; 72 N. W. 576; 56 N. Y. 52. See, as to resulting trusts: 1 Beach, Tr. § 178; 13 S. E. 63; 29 Ark. 612; 30 Ark. 230, 245; 50 Ark. 71.

*J. M. Moore* and *W. B. Smith,* for Scott and others in reply.

Notice of transfer, prior to sale, is equivalent to registration, under our statute, and counsel have erred in their construction of Sand. & H. Dig. § 728.   *Cf.* 16 Ark. 543; 59 Ark. 293; 22 Ark. 580; 27 Ark. 164; 28 Ark. 85; *Id.* 528; 29 Ark. 561; 30 Ark. 115;

*Id.* 267; 33 Ark. 336; 34 Ark. 92; 47 Ark. 540; 54 Ark. 508; 58 Ark. 258. The rule in *Main* v. *Alexander* will not be extended or applied to any cases not falling within the letter of the act. 60 Ark. 595; 42 Ark. 69; 49 Ark. 279; 52 Ark. 385; 39 Ark. 386; 42 Ark. 148; 37 Ark. 94; 41 Ark. 192; 36 Ark. 68. Sand. & H. Dig. § 1338 does not apply to purchasers of stock with actual notice. 58 Ark.. 258; 48 Ark. 305. A plaintiff who purchases under his own attachment or execution sale, crediting the bid on his judgment, is not an innocent purchaser, and an unrecorded mortgage is good as against him. 34 Ark. 92; 58 Ark. 252; 63 Ark. 87; 47 Ark. 247; 67 Ark. 80; 33 Ark. 626. As to rulings in other jurisdictions, see: 7 Fed. 369; 15 Fed. 494; 1 Sumn. 123, s. c. F. C. No. 745; 118 U. S. 9; 52 Fed. 521; 26 Fed. 94; 87 Fed. 58; Lowell, Transf. Stocks, § § 91, 96, 105; 2 Fr. Ex. § 348; 1 Morawetz, Corp. § 196; Cook, Corp. § 489; 2 Thompson, Corp. § 2410; 50 N. H. 571; 52 Vt. 73; 52 N. W. 268; 35 *Id.* 578; 3 Daly, 219; 22 Wend. 362; 3 Paige, 350; 14 N. Y. 560; 34 *Id.* 79, 85; 46 *Id.* 332; 48 N. Y. 585; 49 *Id.* 222; 52 *Id.* 203; 76 *Id.* 371; 132 *Id.* 251; 30 N. E. 644; 4 Halst. Chy. 167; 13 N. J. Eq. 24; 17 N. J. Eq. 119; 3 Binney, 401; 6 Whart. 116; 29 Pa. St. 146; 59 *Id.* 398; 137 *Id.* 147, 148; 146 *Id.* 356; 1 Oh. St. 305; 6 Cal. 425; 35 *Id.* 655; 40 *Id.* 614; 58 *Id.* 603; 64 *Id.* 388; 45 Pac. 329; 31 Conn. 33; 18 Atl. 784; 50 Conn. 472; 26 Atl. 882; 44 Ind. 5; 10 Mo. 388; 29 Mo. App. 492; 108 Mo. 588; 78 S. W. 295; 6 Mo. App. 454; 30 La. Ann. 714; 31 *Id.* 149; 33 *Id.* 1286; 11 S. C. 520; 103 Mass. 306; 34 Atl. 1127; 34 S. W. 209; 18 *Id.* 549; 10 Bush. 54; 33 N. W. 897; 6 Wash. 597.

HILL, C. J. 1. Can a transferee of corporate stock, whose transfer has not been deposited with the county clerk, hold the stock as against an attaching creditor with notice prior to the completion of his levy, and prior to a sale under judgment rendered in the attachment suit?

This question, decisive of the ownership of about 600 shares of stock in the Park Hotel Company, calls for a construction of section 1338, Sandels & Hill's Digest, which is as follows: "Whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid, who shall note the time of such deposit and record it at full length in a book to be kept

by him for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited."

It is insisted, on the one hand, that this section be construed as the court construed section 728, Sandels & Hill's Digest, in *Byers* v. *Engles,* 16 Ark. 543, reading into it, to effectuate its purpose, that actual notice dispensed with record notice; and, on the other hand, that it be construed as section 5091, Sandels & Hill's Digest, was in *Main* v. *Alexander,* 9 Ark. 112; there the court refusing to permit actual notice to dispense with record notice. Each of these cases has been repeatedly followed, if not always indorsed, by the court, until each is a rule of property.

For a review of the cases following each, *Tennant* v. *Watson,* 58 Ark. 252, and *Fort Smith Milling Co.* v. *Mikles,* 61 Ark. 123, are instructive.

These lines of authority run parallel, not at angles, with each other, and each construes a different statute, giving it the force and efficacy intended by the Legislature, and in that way must this statute be tested.

The language in section 728 regarding creditors is closely analogous to the language in this statute; and *Byers* v. *Engles, Tennant* v. *Watson,* and others like it must have great, if not controlling, weight, if the purposes of the statutes were the same, the mischief to be remedied identical, and the reason for adding words to those actually used necessary in order to effectuate the legislative intent. Therefore it is necessary to turn to *Byers* v. *Engles,* and ascertain the controlling reason; and it is thus stated by Mr. Justice Walker for the court:

"As the sole purpose of the statute was to prevent fraud by secret conveyances, any notice given at any time before the fraud is perpetrated, as it accomplishes all that the statute was intended to accomplish, shall be held an equivalent to registry notice." *Byers* v. *Engles,* 16 Ark. 561. Is this reasoning applicable to this statute? The Court of Appeals of this (the Eighth) Federal Circuit and this court have found other objects and purposes for this statute beyond a registry statute to prevent fraud by secret conveyances. The question arose in the transaction now before the court in regard to some of the stock of this corporation which had been pledged as collateral security, and the contest was whether the pledgee could hold it without a certificate of transfer

having been deposited with the county clerk. Judge John A. Williams, then United States District Judge for the Eastern District of Arkansas, decided that it could not be held by the pledgee without first complying with the statute in question. *Masury* v. *Arkansas National Bank,* 87 Fed. Rep. 381. The case was carried to the Circuit Court of Appeals, and the opinion handed down by Judge Thayer, and is reported as *Masury* v. *Arkansas National Bank,* 93 Fed. Rep. 603. The decision of Judge Williams was reversed, the court drawing a distinction between the holder of collateral security and an absolute transferee, and applying the statute only to the transfer of ownership. The same question arose afterwards in the State courts, and, coming here for decision, was decided the same way. *Batesville Tel. Co.* v. *Myer-Schmidt Gro. Co.,* 68 Ark. 115. In that case Mr. Justice Battle, for the court, said: "It is evident that the object of the certificate of the president and secretary as to the name and number of shares of each stockholder and that of the transfer of the stock by the stockholder are the same; and that the latter is intended to carry into effect the intention of the former; and the object of both is to make known the names of the stockholders and the number of shares owned by each of them. This being true, it is obvious that the transfer of stock referred to was the absolute transfer of the legal and equitable title to stock, and not pledges or liens. This section does not undertake to regulate the creation or protection of liens, and hence does not affect those transactions by which liens are created without the transfer of stock, or any indorsement and delivery of stock which do not transfer, and create only a lien." Then the Masury case is referred to, and this part of Judge Thayer's opinion is incorporated into the opinion of this court:

"Looking at the two sections (sections 1337 and 1338 in Sandels & Hill's Digest) in the form in which they were originally enacted, the inference is a reasonable one that the Legislature had in mind transfers whereby a shareholder parted with his entire legal and equitable title to the stock transferred, when it declared, in the concluding clause of the section, that whenever a stockholder transferred his stock a certificate of such transfer should be deposited with the county clerk. While the act does not in terms prescribe by whom the certificate of transfer shall be filed, whether by the corporation or by the person securing

a transfer of stock, nor what the certificate shall contain, yet it
is fair to presume that the lawmaker intended to say that a per-
son purchasing stock should obtain a certificate from the proper
corporate officer to the effect that he had acquired certain shares
of stock from a certain person or persons, and cause the same
to be deposited with the county clerk as one of his muniments of
title. The object of the Legislature in requiring the county clerk
to receive and record semiannual reports from the officers of
corporations, showing their financial condition and who were
their shareholders, and to register transfers of stock made in the
meantime in a book kept for that purpose, would seem to have
been to provide a convenient record which might be consulted
for the purpose of taxation, or for the purpose of ascertaining
who had control of a corporation, and were responsible for its
management, or who might be proceeded against as shareholders
to enforce a stock liability in case a corporation became insolvent.
All of these objects will be substantially subserved by holding that
the section of the act now in question has reference to abso-
lute sales of stock, and that it does not comprehend transfers
which are effected by a simple indorsement and delivery of stock
certificates as collateral security, inasmuch as creditors who thus
hold stock in pledge which has not been transferred on the books
of the corporation are not entitled to vote the stock, or take part
in the management of the corporation, and ordinarily can not be
proceeded against as stockholders to enforce a stock liability."
(Citing authorities.)

Chief Justice BUNN and Justice HUGHES dissented; they
entertaining the same view held by Judge Williams that the
statute applied to pledges as well as absolute sales.

The reasoning of Judge Thayer, incorporated into the
opinion of this court, is accepted as indicating the objects and
purposes of this statute. Analyzing it, there are found these
purposes: (a) To provide a place of record for stock transfers
to show of record the muniment of title of the purchaser; (b) to
provide, in connection with another statute, a convenient record
of the shareholding in the corporation as a basis for taxation
(and it may be added for the information of the assessing officer) ;
(c) to provide a convenient record for ascertaining who have

control of a corporation, and who are responsible for its management; (d) to provide a record of stockholders from which information can be obtained to enforce liability, in cases where stockholders are liable when a corporation becomes insolvent.

Therefore, it cannot be said of this statute, as it was of section 728 in *Byers* v. *Engles,* that it was a registry statute whose sole purpose was to prevent fraud by secret conveyance; subjecting it to a liberal construction, and enabling the court to look beyond the mere letter of the act, and incorporate into it a meaning not appearing on its face, in order to effectuate its sole purpose. This act has objects and purposes beyond a registry act to prevent fraud by secret conveyances, and these objects are part of the corporation system of the State. The dominant thought in the corporation system of this State is publicity in all corporate affairs.

The initial action to form a corporation consists in public record of its object, its capital, the stockholders, and amount owned by each, and the amount paid into the treasury. Annually it must file a full statement of its financial condition, its stockholders and amounts owned by each, and this must be spread at length on the county records. The books of the corporation shall be open in the county in which it does business for the inspection of any stockholder, who shall have access to the same, and shall have the right to examine them at least once a year. The stock is only transferable on the books of the corporation. As an integral and harmonious part of this system, all transfers of stock are to be certified, and the certificate deposited with and recorded by the county clerk, and no transfer shall be valid against creditors of a stockholder until it is so deposited. This latter clause serves another useful purpose in enabling creditors to ascertain the holding of their debtors, and establishing a basis of credit for the stockholder. Real estate ownership is easily ascertained and difficult of concealment, and the necessity of ownership of corporate stocks being fixed by public record is apparent.

The argument is strongly pressed that public policy requires a construction analogous to *Byers* v. *Engles* to enable corporate stocks to circulate freely, like commercial paper. The court can only deal with questions of public policy as they may be discernible in the legislation under construction. It seems clear that

the public policy in regard to corporation affairs is in favor of absolute publicity of all corporate business. This insures immunity from secret infirmities, and vests the title on a public record, instead of an uncertain question of fact in each case, and thereby gives these securities a value commensurate with their worth, and not depreciated by the uncertainty of the title.

Therefore it is held that section 1338 must be construed as it reads, and creditors of a stockholder will prevail over unregistered transfers, even when knowledge of them is actually possessed by the creditor.

2. The sufficiency of the levy on the shares in controversy is questioned. In *Deutschman* v. *Byrne*, 64 Ark. 111, the court laid down the governing rule for liens on corporate stocks, and held there could be no valid levy without a substantial compliance with the statute. The court held on the facts herein that there was at the time of the levy a substantial compliance with the statute, and there is no error in that finding. The creditors attempted persistently to have a literal compliance, and the action of the secretary alone prevented it. As soon as the secretary could be brought into court, he was required to disclose the information he should have given in the first instance, and then the general levies were made definite and certain before the order of sale. The same certainty is not required in an attachment levy as is required in an execution levy and sale, because the attached property is subject to further orders of the court before exposed to sale, and a levy sufficiently definite to identify it will hold it until the court can act.

3. The Park Hotel Company was organized with a capital stock of $200,000, of which Hogaboom subscribed for all except sixteen shares, and paid in $50,000. Subsequently there were increased issues of stock, $200,000 in all, and Hogaboom subscribed and paid for all of it. About the time of the organization subscription lists for stock therein were signed by various parties, some of whom are appellees here. They did not appear in the articles, but shortly after the organization paid the corporation pursuant to their agreements, and the corporation issued stock direct to them. It was levied on here as Hogaboom's, but the court set aside the levy, and these creditors appeal on this

branch of the case. Whoever signs an unconditional subscription list, which is accepted as such, that party becomes a stockholder, entitled to the privileges and subject to the liabilities of a shareholder. He can be compelled by the corporation, its creditors, or the other subscribers, to comply with his agreement, and he has a right, when he pays pursuant to his agreement, to the status of a stockholder, and to have his stock issued to him. 1 Thompson, Corporations, §§ 1136-1141. These parties paid their money, and were entitled to and did receive their stock as original issue. They could not have been compelled to have taken stock assigned them by Hogaboom, if it had been offered that way, and it was not assigned by him actually or constructively, and therefore the statute in question can not affect this stock. What the effect of the subscription of Hogaboom to all the unpaid stock had as between the stockholders or the corporation are not questions here. There was no transfer, and the statute is inapplicable.

F. J. Allen, Moses P. Hays and Abner Gile purchased direct from the hotel company certain stock, and paid to the hotel company the face value thereof. This is evidenced by certificates numbered 18, 39 and 41. The company evidently treated the stock which appeared in the articles in Hogaboom's name, above the $50,000 he paid for, as treasury stock, and issued it to its subscribers as they paid in their subscriptions and to these purchasers thereof. It is manifest that this was not a regular way of proceeding, and it presents questions of difficulty as to Hogaboom's status if the corporation sought to compel him to pay in the subscription to this stock, and it presents questions as to the status of these parties as stockholders. Those are not questions for decision here. The only question here is whether these parties acquired their stock through a transfer from Hogaboom which was not recorded as required by statute. The trial court found these particular certificates were issued direct to these parties on direct payment to the company therefor, and not derived from any transfer from Hogaboom. That takes them · without this statute.

Jackson had 160 shares transferred to him, and sent certificate of transfer to the circuit clerk's office, where it was recorded. No record was made in the county clerk's office. In Garland County the offices of circuit and county clerk are separate. The

rule in *Oats* v. *Walls,* 28 Ark. 244, that where a party seeks the advantage of the registry laws, and takes his instrument to the proper officer, and deposits it with the proper fees for recording with the person in charge of the office, he will be protected against defaults of the officer, is invoked. It is clearly inapplicable. The duties and functions of the clerks are defined by statute, and one clerk has no more authority in the other office than the sheriff or assessor. Such filing is wholly ineffectual.

The case is reversed as to sustaining the levy on certificates 18, 39 and 41, and in all other things is affirmed.

BATTLE and RIDDICK, J. J., dissent.

BATTLE, J. (dissenting.)    Can a transferee of corporate stock, whose transfer has not been registered in the county clerk's office, hold the stock as against an attaching creditor, with notice of such transfer received by him prior to a sale under a judgment rendered in the attachment proceeding?

The answer to this question depends upon section 1338 of Sandels & Hill's Digest, which is as follows: "Whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk aforesaid, who shall note the time of said deposit and record it at full length in a book to be by him kept for that purpose; and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited."

What is the object of the deposit and record of the certificate of transfer? In *Batesville Telephone Company* v. *Myer-Schmidt Grocer Company,* 68 Ark. 115, this court said that its object "is to make known the names of the stockholders and the number of shares owned by each of them." To make known to whom? Obviously, creditors. If it had any other object, why does the statute declare that "no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited?" The deposit and record were intended for the protection of the creditor by giving him notice of the transfer. The statute provides that it shall be invalid as to creditors, and not to any one else, "until such certificate shall have been so deposited." When deposited, the transfer shall become valid as to creditors, thereby showing that the deposit

and record are required for the protection of the creditor. If such is not its object, why declare the effect of the failure to deposit the certificate of the transfer with the county clerk to be to render it invalid as to creditors, and as to them only so long as such failure continues? Under no circumstances is the transfer declared void as to any other persons. The question suggests its answer. Its object is to give notice to creditors. Such is the object generally of recording acts.

Notice being the object of recording acts, it has been held, with few exceptions, that actual notice is equivalent to registration to all persons who have received it. While a record of an instrument of writing is constructive notice to all the world that comes after, any other notice is equally as good so far as it goes. Such doctrine has been maintained under statutes "which declare without qualification that an unacknowledged or unrecorded deed shall be void as against purchasers, or as against all persons who are not parties to the conveyance." In Massachusetts a statute provided that a conveyance shall not "be good and effectual against any other person than the grantor and his heirs unless acknowledged and recorded." "But," said Parsons, C. J., in *Norcross* v. *Widgery,* 2 Mass. 506, "if the second purchaser had notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act." The same construction was placed upon a similar statute in Rhode Island. In *Westerly Savings Bank* v. *Stillman Manufacturing Co.,* 16 R. I. 497, the court, in speaking of this statute, said: "We understand that it has always, notwithstanding the absoluteness of its language, been construed to be subject to an exception, implied from its purpose as a provision for the protection of *bona fide* purchasers and creditors, to the effect that any deed, valid between the parties and their heirs, though neither acknowledged nor recorded, shall likewise be valid as to other persons having actual notice of it; so that if any other person having such notice take a conveyance of the land covered by the prior deed, he will take it subject to any right, title or interest therein created by the prior deed as fully as if the prior deed had been duly acknowledged and recorded. * * * This construction is confirmed by numerous decisions under similar statutes in other States, some of which follow: *Norcross* v. *Widgery,* 2 Mass. 506; *State of Connecticut* v. *Bradish,* 14 Mass. 296; *Trull* v. *Bigelow,* 16 Mass.

406; *Jackson,* dem. *Gilbert* v. *Burgott,* 10 Johns. Rep. 457; *Van Rensselaer* v. *Clark,* 17 Wend. 25; *Rogers* v. *Jones,* 8 N. H. 264; *Emmons* v. *Murray,* 16 N. H. 412; *Hart* v. *Farmers & Mechanics Bank,* 33 Vt. 252; *Ohio Life Ins. Co.* v. *Ledyard,* 8 Ala. 866; *Rupert* v. *Mark,* 15 Ill. 540; *Correy's Lessee* v. *Caxton & Rees,* 4 Binney, 140. * * * This construction finds countenance in the wording of the statutes of some of the States; but the construction is the same, generally, even when the statute declares unqualifiedly that unregistered conveyances shall be void as against purchasers, or as against all persons who are not parties to the conveyance. *LeNeve* v. *LeNeve,* Ambler 436, 2 White & Tudor, Lead. Cas. Eq. 4th Am. Ed. 109, and cases cited in American notes on pages 213, 214."

The reason for this rule is forcibly stated by Judge Redfield in *Hart* v. *Farmers & Mechanics Bank,* 33 Vt. 252. He says: "Where a party proposes to take advantage of the literal application of the provisions of the registry system to perpetrate a fraud by levying upon the land, or purchasing it, after he has knowledge of an unregistered deed, the law interferes by mere construction, and engrafts an exception, not named in the statute, but which it is necessary to imply, in order to defeat the fraudulent use of the provisions of the statute, which it is always safe to presume that the Legislature did not intend."

The same construction was placed by this court upon the following statute:

"No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration without actual notice thereof; or against any creditor of the person executing such deed, bond or instrument, obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond or instrument, duly executed and acknowledged, or proved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex officio* recorder of the county where such real estate may be situated." Sand. & H. Dig. § 728. In *Byers* v. *Engles,* 16 Ark. 543, this court, in speaking of this statute, said: "It will be seen that the 30th section makes deeds, etc., filed for record, constructive notice from the time they are filed. And the 31st section

S C—4

makes actual notice equivalent to registry notice as against pur-
chasers, but does not, in express terms, extend to judgment lien
creditors; thus leaving the latter clause of the section, which
relates to judgment lien creditors, to be construed in view of
the whole statute, and its obvious intent according to precedent
and authority. Considering the statute as, in terms, declaring
unregistered deeds, etc., void as against subsequent judgment
liens, the question is, shall we give this statute a literal construc-
tion, by which judgment lien creditors will override incumbrances
or conveyances not of record at the time judgment is obtained,
wholly irrespective of any actual notice which the judgment
creditor may have; or shall we place this class of creditors upon
the same general footing of creditors who contract for liens, and
hold actual notice equivalent to registry notice in all cases?"
This court held in that case that notice of an instrument of writ-
ing, at any time before, or at the time of, a sale under execution
would in all respects, as to execution or attaching creditors, be
equivalent to registration under the statute; "and that actual
notice, or the filing for record of an instrument affecting real
estate, at any time before sale, would be sufficient to protect the
rights of the vendee as against the creditor of the vendor."

After reviewing a long line of decisions, and finding them
to the effect it held, this court said:

"Upon general principles, therefore, the construction of the
registry acts may be said to be well and firmly established, and
it is but fair to suppose that the language of our statute, being
like that of the English, and most of the American States, was
adopted with reference to the uniform construction which these
statutes had received. And so permanently has this construction
been settled, as well as a like liberal construction of the statute
of frauds, and some others, that to change the construction given
by the courts would, in effect, be changing the law itself."

Again, it said, in the same connection, in the same case:
"In view of the object intended to be effected, * * * and the
almost uniformly liberal construction which the courts have given
to them (the registry acts), we do not feel at liberty to depart
from the spirit of these decisions, which look beyond the mere
letter of the act, and give it such an interpretation as to protect
the innocent purchaser and creditor from fraud, but at the same
time never to allow a fraud to be perpetrated under cover of the

statute. Should we go back to a literal construction of this act, we might, with the same propriety, indulge in a like limited construction of our statute of frauds, to which, like those of other States and of England, we have given a liberal construction; indeed, so uniformly has this construction been given to both these statutes, and also, to some others of like class that the law and its judicial interpretation are so delicately interwoven, and rights so spring into life under them, that a change in the decisions would be, in effect, a repeal of the act itself?"

The ruling in *Byers* v. *Engles* has been approved and followed, without any exception, in every subsequent case that has come before this court involving the construction of our registry acts. *Hornor* v. *Hanks*, 22 Ark. 580; *Peay* v. *Capps*, 27 Ark. 164; *Doswell* v. *Adler*, 28 Ark. 85; *Shinn* v. *Taylor*, 28 Ark. 528; *Stirman* v. *Cravens*, 29 Ark. 561; *Jackson* v. *Allen*, 30 Ark. 115; *Pindall* v. *Trevor*, 30 Ark. 267; *Apperson* v. *Burgett*, 33 Ark. 336; *Williams* v. *McIlroy*, 34 Ark. 92; *Atkinson* v. *Ward*, 47 Ark. 540; *Watson* v. *Murray*, 54 Ark. 508; *Tennant* v. *Watson*, 58 Ark. 258.

But in *Main* v. *Alexander*, 9 Ark. 112, it was held that a mortgage is no lien upon the mortgaged property as against strangers until it is filed for record, "even though they may have actual notice of its existence." That decision was based upon a statute which provides: "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before, which filing shall be notice to all persons of the existence of such mortgage." (Sand. & H. Dig. § 5091.) The ruling in that case is based upon the peculiar language of the statute, and is an exception to the equitable rule of construction that is usually applied to statutes upon the subject of registration; and this court, in following it, has yielded obedience to what it deemed the "unbending and imperious requirements of a legislative enactment," and has never extended it to facts that do not fall within the language of the statute. *Fort Smith Milling Co.* v. *Mikles*, 61 Ark. 127; *Martin* v. *Schichtl*, 60 Ark. 595; *Moore* v. *Little Rock*, 42 Ark. 69; *Mitchell* v. *Wade*, 39 Ark. 386.

There is no similarity in the language of the statute upon the registration of mortgages and that upon the transfer of corporate stock. But there is a strong similarity in the language of the

statute as to the recording of deeds and the latter statute. For the purpose of comparison, I insert the provisions of the statutes made for the benefit of creditors in parallel columns:

"No deed, bond or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity * * * shall be good or valid against * * * any creditor of the person executing such deed, bond or intrument * * * unless such deed, bond or instrument * * * shall be filed for record in the office of the clerk and *ex officio* recorder of the county where such real estate may be situated." Sec. 728.

"Every mortgage * * * shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before." Sec. 5091.

"Whenever any stockholder shall transfer his stock in any such corporation, a certificate of such transfer shall forthwith be deposited with the county clerk * * * and no transfer of stock shall be valid as against any creditor of such stockholder until such certificate shall have been so deposited." Sec. 1338.

This comparison shows that *Byers* v. *Engles, supra,* and the numerous cases that have followed it are decisive of the question propounded in the beginning of this opinion. In view, therefore, of the object intended to be effected by the statute that requires the transfer of corporate stock to be filed for record, "and the almost uniformly liberal ,construction which the courts have given" such statutes, I do not think it wise to depart from the spirit of these decisions, but, on the contrary, for the purpose of protecting the innocent purchaser and creditor from fraud, and preventing the statute becoming an instrument or cover of fraud, and for the purpose of preserving the symmetry of our laws, I think that we should adhere to them.

I answer the question first propounded in the opinion in the affirmative.

RIDDICK, J., concurs with me.